UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 16-CV-2255 (JFB) (SIL)

UNITED STATES OF AMERICA,

Plaintiff,

VERSUS

WORLDWIDE INDUSTRIAL ENTERPRISES, INC.

Defendant.

**MEMORANDUM AND ORDER**
December 7, 2016

JOSEPH F. BIANCO, District Judge:

The United States of America (the "government") brought this action against defendant Worldwide Industrial Enterprises, Inc. ("Worldwide") to enforce a monetary forfeiture order issued by the Federal Communications Commission ("FCC") on January 27, 2015. Worldwide filed a motion to dismiss the complaint, arguing that it is time-barred because the violations underlying the forfeiture order occurred over five years before the complaint was filed. *See* 28 U.S.C. § 2462. For the reasons set forth below, the Court denies Worldwide's motion to dismiss the complaint.

I. BACKGROUND

A. Facts

For purposes of this motion to dismiss, the Court has taken the facts described below from the government's complaint ("Compl."), filed with the Court on May 5, 2016. These facts are not findings of fact by the Court but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to the government, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group,* 570 F.3d 471, 475 (2d Cir. 2009).

On November 9, 2009, the FCC issued a citation to Worldwide for a violation of Section 227 of the Communications Act, 47 U.S.C. § 227, for using a telephone facsimile ("fax") machine to send unsolicited advertisements based on complaints it had received from fourteen consumers. (Compl. ¶¶ 16–17.) The citation warned Worldwide that such violations could result in monetary forfeitures, but Worldwide did not respond. (*Id.* at ¶¶ 18, 23.)

After receiving the citation, Worldwide continued to send unsolicited advertisements to at least seventeen additional consumers

between February 10, 2010 and April 27, 2010. (*Id.* at ¶ 24.) These consumers filed complaints with the FCC, and the FCC issued a Notice of Apparent Liability for Forfeiture ("NAL") on April 7, 2011. (*Id.* at ¶¶ 25, 27.) The NAL notified Worldwide that the FCC had found it to be apparently liable for a forfeiture under Section 503(b)(5) of the Communications Act for a total amount of $87,500. (*Id.* at ¶¶ 27, 28, 30). It also directed Worldwide to either pay the amount or file a written statement seeking reduction or cancellation of the proposed forfeiture within thirty days. (*Id.* at ¶ 31.) Worldwide filed a written opposition to the proposed forfeiture within this timeframe, challenging the reliability and veracity of the complaints and indicating that it could not pay the proposed amount. (*Id.* at ¶ 34.)

On January 27, 2015, the FCC issued a Forfeiture Order against Worldwide in the amount of $87,500 for the violations outlined in the NAL dated April 7, 2011. (*Id.* at ¶ 35.) The Order indicated that the FCC found Worldwide's arguments in response to the NAL unpersuasive and had determined that the consumer complaints were sufficiently reliable to establish a violation of Section 227 of the Communications Act. (*Id.* at ¶ 36.) The Order directed Worldwide to pay the amount within fifteen days, but, despite receiving the order, Worldwide never paid. (*Id.* at ¶¶ 39, 41, 42.)

B. Procedural History

The government commenced this action on May 5, 2016 under Section 503(b) of the Communications Act, 47 U.S.C. § 503(b), to enforce the monetary forfeiture penalty. (*See* ECF No. 1; Compl. ¶ 49.) Worldwide filed a motion to dismiss the complaint as time-barred on August 12, 2016, briefing was completed on October 20, 2016, and the Court heard oral argument on November 16, 2016. (ECF Nos. 13–15, 17.)

II. STANDARD OF REVIEW

The Court treats a motion to dismiss on the grounds that an action is barred by the statute of limitations as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989). In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). As the Supreme Court has stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

III. DISCUSSION

Worldwide argues that the government's action to enforce the Forfeiture Order is time-barred because the violations underlying the Order occurred more than five years before the government brought this action. The government counters that the applicable

2

statute of limitations did not begin to run until the FCC issued the Order in 2015, and, thus, the action is not time-barred. As set forth below, the Court agrees with the government.

A. Statutory Framework

Analysis of the statute of limitations issue first requires a summary of the statutory framework for the imposition and enforcement of penalties under the Communications Act. Under Section 503(b) of the Act, the FCC may impose monetary forfeitures for violations of the Act or the agency's rules. The Act outlines two processes the FCC may employ to carry out this function. *See* 47 U.S.C. § 503(b)(3)–(4). First, "[a]t the discretion of the Commission, a forfeiture penalty may be determined against a person . . . after notice and an opportunity for a hearing before the Commission or an administrative law judge." *Id.* § 503(b)(3)(A). Determinations made in this manner are subject to review by the court of appeals pursuant to 47 U.S.C. § 402. 47 U.S.C. § 503(b)(3)(A). If a person does not pay the penalty after the FCC's determination "has become a final and unappealable order," the FCC can refer the matter to the Attorney General, who can then bring an enforcement action. *Id.* § 503(b)(3)(B). In such an action, "the validity and appropriateness of the final order imposing the forfeiture penalty shall not be subject to review." *Id.* The FCC rules, however, provide that the FCC should employ this method of penalty assessment "only when a hearing is being held for some reason other than the assessment of a forfeiture (such as, to determine whether a renewal application should be granted) and a forfeiture is to be considered as an alternative or in addition to any other Commission action." 47 C.F.R. § 1.80(g).

The second method for assessing penalties under the Communications Act involves a three-step process. *See* 47 U.S.C. § 503(b)(4). When a violation occurs, the FCC must first "issue[] a notice of apparent liability, in writing, with respect to [the alleged violator]." *Id.* § 503(b)(4)(A). The NAL must be issued within one year of the violation. 47 U.S.C. § 503(b)(6)(B). Next, it must grant the alleged violator "an opportunity to show, in writing, within such reasonable period of time as the Commission prescribes by rule or regulation, why no such forfeiture penalty should be imposed." *Id.* § 503(b)(4)(C). This showing must be made within thirty days and "shall include a detailed factual statement and such documentation and affidavits as may be pertinent." 47 C.F.R. § 1.80(f)(3). Once it receives such a response, "the Commission, upon considering all relevant information available to it, will issue an order canceling or reducing the proposed forfeiture or requiring that it be paid in full and stating the date by which the forfeiture must be paid." *Id.* § 1.80(f)(4). If the alleged violator still fails to pay the penalty, the FCC refers the case to the Department of Justice for enforcement of the penalty in the courts. *Id.* § 1.80(f)(5); 47 U.S.C. § 503(b)(4); *see also* 47 U.S.C. § 504(a).

Here, the FCC utilized the second method to assess the penalty. The violations occurred between February 10 and April 27, 2010. The FCC issued the NAL on April 7, 2011, received a response within thirty days thereafter, and issued the Forfeiture Order on January 27, 2015.

B. Statute of Limitations

The parties agree that 28 U.S.C. § 2462 provides the applicable statute of limitations for the Communications Act. Therefore, the question before the Court is whether a claim "accrues" under Section 2462 at the time the FCC issues the forfeiture order pursuant to 47 U.S.C. § 503(b)(4) or at the time of the violation underlying such an order.

3

This is a question of statutory interpretation. When interpreting a statute,

> a court should always turn first to one, cardinal canon before all others. [The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.

*Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) (citations omitted); *see also Estate of Pew v. Cardarelli,* 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *Green v. City of N.Y.,* 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern the plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history." (citations omitted)); *Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (citations omitted)).

To ascertain a statute's "plain meaning," a court must "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Alongside the statutory context, a court may also consult dictionaries to determine the "ordinary, common-sense meaning of the words." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)); *see, e.g. Sullivan v. Hudson*, 490 U.S. 877, 894 (1989) (citing Black's Law Dictionary for the plain meaning of the phrase "civil action"); *United States v. Davis*, 648 F.3d 84, 89 (2d Cir. 2011) (citing Black's Law Dictionary for the plain meaning of the phrase "contrary to law"); *United States v. Cohen*, 260 F.3d 68, 73 (2d Cir. 2001) (citing Black's Law Dictionary and Webster's 3d New International Dictionary for the plain meaning of the term "legal").

Under Section 2462, "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." The Second Circuit has not addressed the meaning of the term "accrued" under this statute, but other circuit courts have done so. In *United States v. Meyer*, 808 F.2d 912, 913–16 (1st Cir. 1987), for example, the First Circuit construed the term in the context of the Export Administration Act ("EAA"), another statute to which Section 2462's limitations period applies. *Id.* at 914. The court observed, "[T]he standard definition of the concept of accrual is to the effect that '[a] cause of action "accrues" when a suit may be maintained thereon.'" *Id.* (quoting Black's Law Dictionary 19 (5th ed. 1979)). Applying this definition to an action to enforce a penalty under the EAA, the court reasoned that "no suit to recover a civil penalty can be mounted under the EAA unless and until the penalty has first been assessed administratively." *Id.* This interpretation, the court continued, "accord[ed] with the obvious proposition that a claim for 'enforcement' of an administrative penalty cannot possibly 'accrue' until there is a penalty to be enforced." *Id.* The definition of the term

4

"enforcement" bolstered this proposition because that "noun by definition ('compulsion . . . forcible urging . . . the compelling of the fulfillment') presupposes the existence of an actual penalty to be enforced." *Id.* at 915 (quoting Webster's Third New International Dictionary 751 (1981) (omissions in original)).

Beyond Section 2462 itself, the court also pointed to the statutory language of the EAA, which provided that "in the event of the failure of any person to pay a penalty imposed pursuant to [the antiboycott provisions of the EAA], a civil action for the recovery thereof may . . . be brought in the name of the United States." *Id.* at 914 (quoting 50 U.S.C. App. § 2410(f) (1982) (alterations and omissions in original)). The court read this language as requiring "the Department [to] refrain from initiating a civil suit until the appropriate administrative authority has imposed a sanction which the respondent has thereafter refused to satisfy." *Id.*

Based on these provisions, the court concluded that, by Section 2462's plain language and the plain language of the EAA, the statute of limitations to enforce a penalty under the EAA did not begin to run until the administrative penalty had been imposed. *Id.*

Other circuit courts have reached the same conclusion based on the plain language of Section 2462 in connection with different statutes. In *U.S. Department of Labor v. Old Ben Coal Co.*, 676 F.2d 259, 261 (7th Cir. 1982), the Seventh Circuit reversed a district court's holding that an enforcement action was time-barred because the underlying violation occurred more than five years before the government filed the action. The court reasoned that "[a] statute of limitations cannot begin to run until there is a right to bring an action." *Id.* at 261. It elaborated:

> The statute of limitations at 28 U.S.C. § 2462 does not begin to run until "the date when the claim first accrued." In the context of the Coal Act the district court claim accrues only after the administrative proceeding has ended, a penalty has been assessed, and the violator has failed to pay the penalty. The Coal Act states specifically that the Secretary shall file a petition for enforcement of the order assessing the civil penalty only if the person against whom the penalty was assessed fails to pay it within the time prescribed in the order. 30 U.S.C. § 819(a)(4) Obviously an administrative agency order must exist before the Secretary can file a district court action to enforce it.

*Id.*; *see also 3M Co. v. Browner*, 17 F.3d 1453, 1457 n.8 (D.C. Cir. 1994) (agreeing that, "with respect to an action in the district court to collect a penalty previously imposed administratively, the collection claim accrues under § 2462 'after the administrative proceeding has ended, a penalty has been assessed, and the violator has failed to pay the penalty'" (quoting *Old Ben Coal*, 676 F.2d at 261)).

Likewise, in *SEC v. Mohn*, 465 F.3d 647, 653–54 (6th Cir. 2006), the Sixth Circuit cited the Black's Law definition of "accrue" in concluding that the limitations period on an enforcement action by the Securities Exchange Commission ("SEC") began to run at the time the order was issued because, before then, "[t]he SEC simply had no order to enforce." 465 F.3d at 654.

Finally, in *United States v. Godbout-Bandal*, 232 F.3d 637, 639 (8th Cir. 2000), the Eighth Circuit expressly adopted the First Circuit's plain language reasoning in *Meyer* while applying Section 2462 to an

5

enforcement action under the Change in Bank Control Act, 12 U.S.C. § 1818(i). 232 F.3d at 640. It further reasoned that the text of Section 1818 reinforced this conclusion because it did "not allow the government to begin a collection proceeding until the defendant 'fails to pay an assessment after any penalty imposed under this paragraph has become final.'" *Id.* (quoting 12 U.S.C. § 1818(i)(2)(I)(i)); *see also SEC v. Pinchas*, 421 F. Supp. 2d 781, 783–84 (S.D.N.Y. 2006); *United States v. Great American Veal, Inc.*, 998 F. Supp. 416, 423–24 (D. N.J. 1998); *United States v. McCune*, 763 F. Supp. 916, 918 (S.D. Ohio 1989); *United States v. Sacks*, 2011 WL 6883740, at *4 (W.D. Wash. Dec. 28, 2011).

The only circuit court to adopt the position advocated by Worldwide—that the limitations period begins to run at the time of the underlying violation—is the Fifth Circuit. *See United States v. Core Laboratories, Inc.*, 759 F.2d 480, 482 (5th Cir. 1985).[1] It did so, however, not based on the plain language of the statute, but rather on the decisional law that arose under Section 2462's predecessors. *Id.* ("A review of these cases clearly demonstrates that the date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute began to run.").[2] It also relied on the legislative history of the EAA and "[p]ractical considerations" about the possibility of the government prolonging the administrative proceedings. *Id.*

In *Meyer*, the First Circuit expressly rejected the *Core Laboratories* holding. *See* 808 F.2d at 913 ("[W]e find the Fifth Circuit's reasoning—the core of *Core,* as it were—to be unconvincing."). The *Meyer* court took issue with *Core*'s partial reliance on legislative history, given the rule that "courts should be extremely hesitant to search for ways to interpose their own notions of Congress's intent" when the

---

[1] Worldwide argues that the D.C. Circuit adopted its interpretation of Section 2462 as applied to the Communications Act in *Action for Children's Television v. Federal Communications Commission*, 59 F.3d 1249, 1254 (D.C. Cir. 1995). The Court disagrees. In *Action for Children's Television*, the petitioners argued that the FCC's process for assessing forfeitures for the broadcast of indecent programming lacked appropriate safeguards—such as prompt judicial review—and thus compelled "broadcasters to conform with potentially unconstitutional restrictions upon their speech." *Id.* at 1252. In addressing this question, the court "assume[d] that the general five-year period of limitations on forfeiture proceedings . . . would effectively prevent the Government from filing a civil action more than five years after the indecent material was aired." *Id.* at 1254. The court specifically noted that "the issue has never been litigated," and, given its complete lack of analysis on that issue, the court appears to have adopted this assumption only to assess the petitioners' First Amendment argument. *Id.* Therefore, the Court concludes that *Action for Children's Television* did not adopt Worldwide's position on the question presented here.

[2] Specifically, the court cited the following cases: *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 982 n.1 (3d Cir. 1984); *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1287 (9th Cir. 1984); *United States v. Ancorp National Services, Inc.*, 516 F.2d 198, 200 n.5 (2d Cir. 1975); *United States v. Witherspoon*, 211 F.2d 858, 861 (6th Cir. 1954); *Smith v. United States*, 143 F.2d 228, 229 (9th Cir. 1944); *Lancashire Shipping Co. v. Durning*, 98 F.2d 751, 753 (2d Cir. 1938); *Durning v. McDonnell*, 86 F.2d 91, 92–93 (2d Cir. 1937); *The Ng Ka Py Cases*, 24 F.2d 772, 774 (9th Cir. 1928); *United States v. Advance Machine Co.*, 547 F. Supp. 1085, 1091 (D. Minn. 1982); *United States v. C & R Trucking Co.*, 537 F. Supp. 1080, 1083 (N.D. W. Va. 1982); *United States v. Firestone Tire & Rubber Co.*, 518 F. Supp. 1021, 1037 (N.D. Ohio 1981); *FTC v. Lukens Steel Co.*, 454 F. Supp. 1182, 1185 n.2 (D.D.C. 1978); *United States v. Appling*, 239 F. Supp. 185, 194–95 (S.D. Tex. 1965); *United States v. Fraser*, 156 F. Supp. 144, 147 (D. Mont. 1957); *United States v. Wilson*, 133 F. Supp. 882, 883 (N.D. Cal. 1955); *United States v. One Dark Bay Horse*, 130 Fed. 240, 241 (D. Vt. 1904).

"language of the statute seems clear and unambiguous." *Id.* at 915 (citing *Yates v. United States,* 354 U.S. 298, 305, (1957); *Browder v. United States,* 312 U.S. 335, 338 (1941)); *see also Lee,* 166 F.3d at 544 ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous."). Indeed, having "found that 28 U.S.C. § 2462 is susceptible to but a single reasonable reading," the court characterized the Fifth Circuit's "reliance on congressional source materials" as "both inappropriate and ill-advised." *Meyer,* 808 F.2d at 905.

As for the decisional law, the First Circuit concluded that *Core*'s holding was at odds with "the Supreme Court's seminal treatment of virtually this precise issue in *Crown Coat Front Co. v. United States,* 386 U.S. 503 (1967)." *Id.* at 916. In *Crown Coat*, the Supreme Court construed 28 U.S.C. § 2401(a), which mirrored Section 2462 by providing that certain civil actions "shall be barred unless the complaint is filed within six years after the right of action first accrues." *Crown Coat*, 386 U.S. at 507 (quoting 28 U.S.C. § 2401(a)). The plaintiff had brought a claim more than six years after the underlying events but within six years of the final administrative decision on the claim. *Id.* at 508. The Court held that the plaintiff's "right to bring a civil action first accrue[d] when the [agency] finally ruled on its claim." *Id.* at 522.

The *Meyer* court also deemed the cases cited by the Fifth Circuit to be "off the mark." 808 F.2d at 920. It first determined that the majority of those cases "involve situations bereft of the key ingredient shared by *Crown Coat* and by the EAA: the necessity for allowing an administrative proceeding to run its course as a precondition to the commencement of suit." *Id.*; *see also id.* at 920 n.8 (collecting cases that fell within this category). The next group of cases "involved situations where prosecutorial determinations, rather than adjudicatory administrative proceedings, constituted the precondition to suit." *Id.* (finding that *Athlone Industries*, 746 F.2d 977, *Advance Machine*, 547 F. Supp. 1085, *Ancorp*, 516 F.2d 198, and *Lukens Steel*, 454 F. Supp. 1182 fell into this category). Because such administrative decisions "are not in any sense adjudicative . . . [but] comprise nothing more or less than decisions to bring suit," they differed markedly from the EAA's process for imposing a sanction and thus were of little value on the statute of limitations question. *Id.* The court distinguished the remaining cases on more fact-specific grounds. *Id.* at 921 (distinguishing *Durning,* 86 F.2d 91, because, there, "more than five years had elapsed since the assessment of the administrative penalty," and *C & R Trucking*, 537 F. Supp. 1080, because the government brought the enforcement suit "within five years next following both the commission of the infractions and the ensuing imposition of penalties").

Finally, the First Circuit contrasted the Fifth Circuit's concerns over the government prolonging cases with its own concerns that, under the *Core* rule, "the Department would have a total of five years from the date of a statutory violation within which to uncover the infraction, conduct the necessary investigation, issue a charging letter, and wend its way through the (often lengthy) administrative process." *Id.* at 919. An alleged violator could thus easily delay the administrative process long enough to have any enforcement action barred by the statute of limitations. *Id.* The court deemed it "implausible that Congress intended to endow private litigants with so powerful an incentive for procrastination." *Id.* at 920.

The Court finds the majority view of Section 2462 to be more persuasive and applicable to the Communications Act than

7

the Fifth Circuit's. Black's Law Dictionary presently defines the term "accrue" as "[t]o come into existence as an enforceable claim or right" (10th ed. 2014), a definition that mirrors those cited in *Meyer* and *Mohn*. *See Meyer*, 808 F.2d at 914; *Mohn*, 465 F.3d at 654. Thus, Section 2462 could also be read as follows: "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first [came into existence as an enforceable claim or right]." As the First, Sixth, and Seventh Circuits have noted, however, a claim to enforce a penalty does not come into existence until there is an actual penalty to enforce. *See Meyer*, 808 F.2d at 914 ("[N]o suit to recover a civil penalty can be mounted . . . unless and until the penalty has first been assessed administratively."); *Mohn*, 465 F.3d at 654 ("The SEC simply had no order to enforce until it issued the . . . order affirming the NASD sanctions."); *Old Ben Coal*, 676 F.2d at 261 ("Obviously an administrative agency order must exist before the Secretary can file a district court action to enforce it."). Indeed, the term "enforcement" in Section 2462 "presupposes the existence of an actual penalty to be enforced." *Meyer*, 808 F.2d at 914. Therefore, by the plain meaning of the terms "accrue" and "enforcement," Section 2462's limitations period begins to run on the FCC's action to enforce a penalty when the FCC initially imposes a forfeiture penalty. *See Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1220 (2013) ("Thus the standard rule is that a claim accrues when the plaintiff has a *complete and present* cause of action." (citations omitted) (emphasis added)).

Furthermore, like in *Meyer*, *Godbout-Bandal*, and *Old Ben Coal*, this reading of Section 2462 comports with the provisions of the underlying statute, the Communications Act. Specifically, Section 503(b)(4) authorizes the FCC to impose a "forfeiture penalty," but only after issuing an NAL and giving the alleged violator an opportunity to challenge it. 27 U.S.C. § 503(b)(4). It further provides that a "forfeiture penalty *determined under* [Section 503(b)(4)] shall be recoverable pursuant to Section 504(a)." *Id.* (emphasis added); *see also* 27 U.S.C. § 504(a) ("The forfeitures provided for in this chapter . . . shall be recoverable . . . in a civil suit in the name of the United States."). Put differently, the "forfeiture penalty" is not "recoverable" until it has been "determined" by the FCC.

The FCC procedural rules confirm this interpretation of the Communications Act by providing that, "[i]f the forfeiture is not paid, the case will be referred to the Department of Justice for collection under section 504(a) of the Communications Act." 47 C.F.R. § 1.80(f)(5). The rule's language closely resembles the language of the EAA in *Meyer*, and that of the Bank Control Act in *Godbout-Bandal*. *See Meyer*, 808 F.2d at 914 ("[I]n the event of the failure of any person to pay a penalty . . . a civil action for the recovery thereof may . . . be brought in the name of the United States." (quoting 50 U.S.C. App. § 2410(f))); *Godbout-Bandal*, 232 F.3d at 639 (government could not bring suit until a defendant "fails to pay an assessment after any penalty imposed under this paragraph has become final" (quoting 12 U.S.C. § 1818(i)(2)(I)(i))); *see also Old Ben Coal*, 676 F.2d at 261 ("The Coal Act states specifically that the Secretary shall file a petition for enforcement of the order assessing the civil penalty only if the person against whom the penalty was assessed fails to pay it within the time prescribed in the order."). The Communications Act thus "strongly suggests—indeed, requires—that the [FCC] refrain from initiating a civil suit until the appropriate administrative authority has imposed a sanction which the [alleged violator] has thereafter refused to satisfy." *Meyer*, 808 F.2d at 914. As such, the

language of the underlying statute and rules reinforces the Court's reading of Section 2462.

Overall, the plain language of Section 2462 proves dispositive on the issue. Like the First Circuit, the Court finds the language of Section 2462 to be "clear and unambiguous . . . susceptible to but a single reasonable reading," *Meyer*, 808 F.2d at 915, and the language of the Communications Act reinforces this reading. The Court, therefore, holds that the limitations period begins to run on issuance of the forfeiture order, not on the occurrence of the underlying violation.

Worldwide argues that the dispositive criteria in *Meyer* was not the plain language of the statute, but rather the type of administrative procedure at issue. In particular, it contends that the procedure in *Meyer* was adjudicatory in nature and thus served as the basis for the holding that Section 2462's limitations period should be measured from the date of the administrative assessment of the penalty. Here, by contrast, Worldwide asserts that the procedure is closer to a prosecutorial determination without adjudicatory protections, and, consequently, the limitations period should run from the date of the violation. For support, Worldwide highlights *Meyer*'s efforts to distinguish the cases relied upon by the Fifth Circuit that "involved situations where prosecutorial determinations, rather than adjudicatory administrative proceedings, constituted the precondition to suit." *Meyer*, 808 F.2d at 920. As Worldwide points out, the First Circuit observed that "the limitations period on [such] wholly administrative action runs from the time of the underlying violation rather than from the government's decision to prosecute the charge." *Id.*

Worldwide's reliance on the nature of the administrative proceeding is misplaced. In *Meyer*, the court did not decide the limitations issue based on the adjudicatory nature of the EAA proceeding but on "[t]he phraseology of 28 U.S.C. § 2462, its juxtaposition and interrelationship with the mechanics of statutes like the EAA, the better-reasoned caselaw, and policy concerns (to the extent appropriate)." *Id.* at 922. Importantly, the first factor the court analyzed—the plain language—appears to have been the most crucial, as the following analysis simply showed that the court's "reading of the plain language of the statute [did] not stand unassisted." *Id.* at 916; *see also Godbout-Bandal*, 232 F.3d at 639–40 ("Because the [*Meyer*] court found the language of the relevant statutes to be unambiguous, it rejected any resort to statutory construction to aid in interpretation."). In addition, besides the Fifth Circuit, the other circuits that have addressed this issue have focused on the language of the statute, not on the nature of the administrative proceedings. *See Old Ben Coal*, 676 F.2d at 261; *Mohn*, 465 F.3d at 653–54; *Godbout-Bandal*, 232 F.3d at 639. Furthermore, even had the First Circuit relied heavily on the adjudicatory nature of the proceedings, such reliance was not necessary after it concluded that the statutory language was "susceptible to but a single reasonable reading," *id.* at 915, because the Supreme Court has made clear that where "the words of the statute are unambiguous, the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003); *see also Germain,* 503 U.S. at 253–54; *Cardarelli,* 527 F.3d at 30.

The First Circuit's comment about the limitations period for prosecutorial decisions, meanwhile, came while it was distinguishing four cases on which the Fifth Circuit relied. *See Meyer*, 808 F.2d at 920. Those cases, however, are importantly distinguishable in other respects. In both *Athlone* and *Advance*, the administrative agency never assessed civil penalties, *see Athlone*, 746 F.2d at 980

(noting that case arose "out of the Commission's *unsuccessful* attempts to also impose civil penalties administratively" (emphasis added)); *Advance*, 547 F. Supp. at 1088 (defendants bring civil suit to stop agency from issuing civil penalty before penalty became final), so the issue addressed in those cases was not whether the statute of limitations began to run at the time of a penalty or the time of the violation but whether the imposition of "the civil penalties *in the first instance* was time barred," *Great Am. Veal, Inc.*, 998 F. Supp. at 422 (describing the issue in *Athlone*). This differs from the issue here where a penalty has been assessed but not enforced.[3] *Ancorp* and *Lukens Steel*, meanwhile, do not address the issue in any detail but instead state summarily in footnotes that Section 2462 barred recovery for violations that occurred over five years before the filing of the action. *Ancorp*, 516 F.2d at 201 n.5; *Lukens Steel*, 454 F. Supp. at 1185 n.2. *Ancorp* does not cite any supportive case law for this statement, and *Lukens Steel* only cites *Ancorp*. *Ancorp*, 516 F.2d at 201 n.5; *Lukens Steel*, 454 F. Supp. at 1185 n.2. Most importantly, none of these cases analyzed the plain meaning of Section 2462. *See Athlone*, 746 F.2d at 982 n.1 (focusing on underlying statute); *Advance*, 547 F. Supp. at 1089–90 (same); *Ancorp*, 516 F.2d at 201 n.5 (summary treatment of issue); *Lukens Steel*, 454 F. Supp. at 1185 n.2 (same).

The Court has reviewed the remaining cases cited by the Fifth Circuit and agrees with the First Circuit that they are "off the mark" for the reasons described in *Meyer*, 808 F.2d at 920. Furthermore, the Court declines to follow the Fifth Circuit's example in consulting legislative history because it is impermissible to do so where, as here, the meaning of the statutory language is unambiguous. *See Green*, 465 F.3d at 78.

Finally, while consideration of the "practical consequences of the suggested interpretations" is permissible alongside a plain meaning approach, *Cmty. Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 151 (2d Cir. 2014), the practical consequences here do not disqualify the Court's reading of the statute. Echoing the Fifth Circuit, Worldwide contends that because "[t]he progress of administrative proceedings is largely within the control of the Government . . . [a] limitations period that began to run only after the government concluded its administrative proceedings would thus amount in practice to little or none." *Core Laboratories*, 759 F.2d at 482, 483. The Court finds this concern to be overblown for two reasons. First, the Communications Act requires the FCC to take action within one year of the violation by issuing the NAL. *See* 47 U.S.C. § 503(b)(6)(B) ("No forfeiture penalty shall be determined or imposed against any person under this subsection if . . . the violation charged occurred more

---

[3] For similar reasons, the Court disagrees with Worldwide's argument that *Gabelli*, 133 S. Ct. at 1221, supports the Fifth Circuit's rule. *Gabelli* concerned a statute that did not require an agency to assess a forfeiture before the government could file suit. *See id.* at 1219 ("The Securities and Exchange Commission is authorized to bring enforcement actions against investment advisers who violate the Act . . . . As part of such enforcement actions, the SEC may *seek* civil penalties." (citing 15 U.S.C. § 80b–9(d), (e), (f) (emphasis added))); *see also* 15 U.S.C. § 80b–9. Instead, the statute authorized the SEC to "bring an action . . . to seek . . . a civil penalty" when a person violated the securities laws but vested the "jurisdiction to impose" the penalty in the district court, not the SEC. 15 U.S.C. § 80b-9(e)(1). Although the Supreme Court held that Section 2462's limitations period began at the time of the underlying offense with respect to that statute, the only issue was whether the government's right of action to file suit *seeking* a penalty (rather than enforcing a preexisting one) accrued at the time of the offense or when the government discovered the offense. Here, by contrast, the government cannot file suit until it has a forfeiture order to enforce, so the reasoning and holding of *Gabelli* do not apply.

than 1 year prior to the date of issuance of the required notice or notice of apparent liability."). Second, the government has little incentive to delay, as the consequences of delay (such as stale evidence) will usually harm the government, which bears the burden of proof, more than the defendant. *See Meyer*, 808 F.2d at 922 ("The government, if it suspects that a wrong has been committed, has no discernible incentive to delay institution and prosecution of administrative charges. Ordinarily, any such footdragging would tend to reduce the Department's chances of proving its case and collecting monetary sanctions.").

The Fifth Circuit's rule, moreover, also bears risks of negative practical consequences by encouraging delay on the part of an alleged violator. An alleged violator could introduce complex questions of fact that require time-consuming investigations by the FCC before it can decide whether to impose a civil penalty. *See* 47 C.F.R. § 1.80(f)(3). If the FCC issues an order, the alleged violator can then petition for review and then again for reconsideration. *Id.* §§ 1.115, 1.106. The alleged violator could also seek an administrative stay of the forfeiture order pending resolution of the petitions for review and reconsideration. *Id.* § 1.102(b)(3). If the limitations period began to run at the time of the underlying violation, the FCC may need to bring an enforcement action while the petition for review or reconsideration is pending, even though such a petition could moot the case. Thus, the practical consequences of the Fifth Circuit's rule militate in favor of the First Circuit's. *See Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) ("Statutes should be interpreted to avoid . . . unreasonable results whenever possible." (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982)); *see also Meyer*, 808 F.2d at 919 (rejecting Fifth Circuit rule in part because, under it, "[a] suspected violator would . . . have considerable incentive to employ the available procedures to work delay"); *Godbout-Bandal*, 232 F.3d at 640 ("A violator should not be able to escape paying a penalty by dragging his feet through the administrative penalty-assessment process.").

In sum, the Court finds the majority view on this issue more persuasive than the Fifth Circuit's. Consequently, the Court holds that, under the plain meaning of Section 2462, the limitations period for Section 503(b)(4) of the Communications Act begins at the time the forfeiture order is issued, not when the underlying violation occurs.

\* \* \*

For the reasons outlined above, the Court denies Worldwide's motion to dismiss the complaint as time-barred.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 7, 2016
Central Islip, NY

\* \* \*

The government is represented by Mary M. Dickman and Jolie Apicella, Assistant United States Attorneys, on behalf of Robert L. Capers, United States Attorney, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201. Defendant is represented by Scott B. Fisher, Jaspan Schlesinger LLP, 300 Garden City Plaza, Garden City, New York 11530.

11